IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA HERNANDEZ, O.B.O. L.A., a minor, | ) ) ) | CASE NO. 1:10CV1295 |
| Plaintiff, | ) ) | JUDGE DAN A. POLSTER |
| v. | ) ) | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Maria Hernandez ("Plaintiff"), acting on behalf of L.A., her minor son

("Claimant"), seeks judicial review of the final decision of Defendant, Michael J. Astrue,

Commissioner of Social Security (the "Commissioner"), denying Claimant's application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §

1381 et seq. (The "Act").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the undersigned recommends that the final decision of the

Commissioner should be REVERSED and REMANDED.

## I.  Procedural History

Plaintiff filed an application for SSI on behalf of Claimant on October 26, 2004 for

Attention Deficit Hyperactivity Disorder ("ADHD") and aggressive behavior, alleging an onset

date of September 1, 2001.  Tr. 16, 70, 87-91.  The state agency denied Plaintiff's application

initially and upon reconsideration.  Tr. 16, 70-23, 76-78.  Plaintiff timely requested a hearing and

on May 23, 2008, a hearing was held before Administrative Law Judge E. James Gildea (the

1

"ALJ").  In a decision dated July 22, 2008, the ALJ determined that Claimant was not disabled or entitled to SSI benefits.  Tr. 16-21.  Plaintiff requested review of this decision by the Appeals Council.  Tr. 9.  On September 25, 2009, the Appeals Counsel denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 4-6.

On June 10, 2010, Plaintiff filed this action seeking review of the ALJ's decision.  Doc. 1. On March 15, 2011, the Commissioner filed his Brief on the Merits.  Doc. 19.  On April 18, Plaintiff filed her Brief on the Merits, asserting the following issue for review:

> Whether the administrative law judge's finding at Step 3 of the sequential evaluation was supported by substantial evidence where the record as a whole supports [Plaintiff]'s impairment functionally equaling the listing with marked limitations in at least two of the following domains:  Acquiring and Using Information, Attending and Completing Tasks, Interacting and relating with Others, and Caring for Yourself.

Doc. 20.  On April 19, Plaintiff filed an Amended Brief to comply with the Court's initial order. Doc. 21.

## II. Evidence

### A.      Personal and Vocational Evidence

Claimant was born on November 30, 1995 (Tr. 87) and was eight years old on the date his SSI application (a school-age child) and twelve years old at the time of the ALJ's decision (an adolescent).  Tr. 19.  Claimant has never engaged in substantial gainful activity.  *Id.*

### B.      Medical Evidence

In 2004, Claimant began treatment for ADHD at the Lincoln Counseling Center, which included attending counseling sessions and taking prescription medication, i.e., Ritalin.  Tr. 21, 170.  A December 13, 2004 treatment note indicated that Claimant's teacher reported significant improvement in his behavior after he started taking medication.  Tr. 21, 159, 160.

On February 23, 2005, Claimant underwent a psychological examination conducted by Richard C. Halas, M.A., a consultative examiner designated by the state agency.  Tr. 21, 182-86. Following a clinical interview and comprehensive psychological testing, Mr. Halas opined that Claimant had ADHD, but did not diagnose Claimant as having a borderline intellectual functioning level due to Claimant's verbal IQ score of 93.[1]  Tr. 21, 186.  He assessed a Global Assessment Functioning ("GAF") score of 55 indicating moderate functional difficulties.[2]  Tr. 186.  Mr. Halas noted that Claimant was described as "a popular child" who had "many friends." Tr. 184.  He stated that Claimant had a good relationship with his mother and was extremely polite during the exam.  Tr. 186.

The day after his consultative examination, Claimant sought treatment at the Applewood Centers of Lorain County because his case closed at Lincoln.  Tr. 21.  On March 10, 2005, child psychiatrist Jeffrey D. Smith, M.D. evaluated Claimant, confirmed the ADHD diagnosis, and assessed Claimant's GAF score at 60.  Tr. 21, 212-15.  60.  Tr. 215.  Dr. Smith prescribed Ritalin and Clonidine.  Tr. 21, 194, 215.  Dr. Smith noted that on medication, Claimant's grades are A's, B's, and C's.  Tr. 213.  He also stated that on medication, Claimant's behavior is very good.  Tr. 214.  Claimant continued treatment with Dr. Smith through 2005, 2006, and 2007, but missed a number of appointments, which resulted in a warning to Plaintiff that Claimant's case would be closed.  Tr. 21-22, 197-198.

On March 4, 2005, state agency reviewing psychologist John Waddell, Ph.D., opined that

---

[1] Dr. Hallas administered the Wechsler Intelligence Scale for Children #IV to determine Claimant's IQ scores.  Tr. 182-186.  He noted that a verbal IQ of 93 is in the average range, and that Claimant was average in verbal abstractions, vocabulary, and matrix reasoning.  Tr. 185.

[2] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning.  Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. A GAF score of 51- 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34 (American Psychiatric Ass'n, 4th Ed. text rev. 2000) (DSM-IV-TR).

Plaintiff's ADHD was severe but did not meet, medically equal, or functionally equal the listings. Tr. 22, 216-221.  Dr. Waddell found that Claimant had less than marked limitations in the domains of "acquiring and using information," "attending and completing tasks," "interacting and relating with others," and "caring for yourself."  Tr. 22, 218-19.  He found no limitation in the domains of "moving about and manipulating objects" and "health and physical well-being."  Tr. 219.  In August 2005, state agency reviewer Guy G. Melvin, Ph.D., affirmed Dr. Waddell's findings.  Tr. 22, 216.

On April 5, 2007, Dr. Smith re-evaluated Claimant at Applewood.  Tr. 194-97.  He noted that Claimant's degree of hyperactivity improved from his initial assessment.  Tr. 196.  He documented that Claimant had been off of his medication for the last several months and was experiencing behavioral problems at home and school.  Tr. 197.  Dr. Smith prescribed Ritalin once again.  Tr. 197.  A few months later, psychiatric progress notes from Dr. Smith indicated that Claimant's behavioral reports from school had been positive.  Tr. 193.  He also noted that Claimant traveled to Puerto Rico on his own for two months to see his father.  Tr. 193.

In March 2008, pediatric medical expert Lawrence D. Hagerman, M.D., reviewed the record in its entirety and opined that Claimant had ADHD.  Tr. 22, 256.  Dr. Hagerman found that Claimant's ADHD did not meet or medically equal the severity of any listed impairment.  Tr. 22, 256.  He found that Claimant had no limitation in the domains of "acquiring and using information," "moving about and manipulating," "caring for yourself," and "health and physical well-being."  Tr. 22, 256-257.  He also found that Claimant had less than marked limitations in the domains of "attending and completing tasks" and "interacting and relating with others."  Tr. 22, 256.  Dr. Hagerman noted that Claimant's ADHD symptoms responded very well when his medicine was taken regularly.  Tr. 256-57.

## C.    Testimonial Evidence

On May 23, 2008, Plaintiff and Claimant appeared with counsel and testified at a hearing before the ALJ with the assistance of a translator.  Tr. 40-58.  Plaintiff is not fluent in English. Tr. 43-44.  Claimant is bilingual and fluent in both English and Spanish.  Tr. 45, 195.  Claimant testified first.  Tr. 44-54.  The ALJ began questioning Claimant and Claimant stated he did not know the answers to several of the questions, including those asking for his birthday and the name of his school.  Tr. 20, 47- 48.  The ALJ determined that Claimant was not being cooperative and turned over questioning to Claimant's attorney.  Tr. 50.  In response to repeated questions from his attorney, Claimant testified that he had been suspended from riding the school bus because of an attempted fight.  Tr. 20, 51.  He stated that he had friends and that he played basketball on the playground.  Tr. 20, 52-53.  He also said that he did his homework, watched television, and played.  Tr. 20, 53.

During her questioning, Plaintiff stated that Claimant received D's and F's, and maybe an A and C on his most recent report card.  Tr. 54-55.  Plaintiff testified that Claimant could behave sometimes but was out of control and did not listen at other times.  Tr. 20, 55.  She stated that Claimant had been suspended from school several times because he "talk[ed] nasty" and was disrespectful to teachers.  Tr. 20, 55.  She also testified that Claimant locked himself in his room, watched television, had no friends, and talked to himself.  Tr. 20, 56.  Plaintiff noted that in the past, Claimant had trouble with neighbors because he was disrespectful to them.  Tr. 57.

## D.    Other Evidence

There is evidence in the record that Claimant at times failed to take his prescribed medication.  For example, in 2004, a move from Puerto Rico to the States disrupted Claimant's medication schedule.  Tr. 174.  In addition, when his psychiatrist left practice in 2005, there was a gap in medications before a new psychiatrist could be obtained.  Tr. 212.  In November 2005,

Claimant's mother ran out of medication for a few weeks.  Tr. 205.  In December 2005, Claimant

often missed his morning dose because he had to rush out of the house for school.  Tr. 203.

Because of this, it was arranged that Claimant take his medication at school and compliance

improved.  Tr. 194-201.  In April 2007, Claimant stopped taking his medication because his

school had run out of medication and failed to inform his mother.  Tr. 195.  Claimant was off

medication for the first week of school in August 2007 because he left his medication at this

father's house in Puerto Rico.  Tr. 227-228.  In December 20, there was a gap in medication due

to a pharmacy shortage.  Tr. 262.  It is unclear if there were any other instances in which Claimant

failed to take his medication as there is no testimony on this issue.

### III. Standard for Childhood Disability

The standard for evaluating a child's disability claim differs from that used for an adult.

42 U.S.C. § 1382c(a)(3)(C)(i); *Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 F. App'x 146, 147

(6th Cir. 2002).  A child is considered disabled if he has a "medically determinable physical or

mental impairment that results in marked and severe functional limitations and can be expected to

result in death or has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 1382c(a)(3)(C)(i).  In determining whether a child's impairments satisfy

this standard, the Commissioner's regulations prescribe a three-step sequential evaluation.  20

C.F.R. § 416.924(b)-(d).  The three steps can be summarized as follows:

1. The Commissioner must determine whether the child is engaging in substantial gainful activity.  If so, the child is not disabled and the Commissioner is not required to further review the claim.

2. The Commissioner must determine whether the child has a "severe" impairment, i.e., one that is more than a slight abnormality and causes more than minimal functional limitation.  If the child does not, the child is not disabled.

3. The Commissioner must determine if the child has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment in the Listing of Impairments ("Listings"), 20 C.F.R. Pt. 404, subpt. P, app. 1.   If so, the child is disabled.

*Id.*

Plaintiff is not asserting that Claimant's impairment meets or medically equals a listed impairment.  Rather, Plaintiff alleges that Claimant's impairment functionally equals a listed impairment.  For an impairment or combination of impairments to be functionally equivalent to a listed impairment, the child must have "marked" limitations[3] in two domains of functioning or an "extreme" limitation[4] in one domain of functioning.  20 C.F.R. § 416. 926a(d).  To make this determination, it is necessary for the ALJ to evaluate the child's abilities in six domains: (1) the ability to acquire and use information; (2) the ability to attend to and complete tasks; (3) the ability to interact and relate with others; (4) the ability to move about and manipulate objects; (5) the ability to care for oneself; and (6) one's general health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).

### IV. The ALJ's Decision

The ALJ denied benefits in a decision dated July 22, 2008.  Tr. 16-29.  He determined that Claimant had not engaged in substantial gainful activity during the relevant time frame.  Tr. 19.  He also found that Claimant had ADHD, which was a "severe" impairment.  Tr. 19.  The ALJ then found that Claimant's ADHD did not meet or medically equal any impairment included in the listed impairments.  Tr. 19- 28.  Finally, the ALJ determined that Claimant did not have an

---

[3] A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(i).  A "marked" limitation is "more than moderate" but "less than extreme."  *Id.*  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*

[4] An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).  An "extreme" limitation means "more than marked." *Id.*  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

impairment or combination of impairments that functionally equaled an impairment included in

the listed impairments (Tr. 19) and, therefore, was not disabled or eligible for SSI.  Tr. 28.  In

reaching this conclusion, the ALJ determined that Claimant and Plaintiff were not credible

because their testimony was inconsistent with, or contradicted by, other evidence in the record.

Tr. 20.  The ALJ evaluated Claimant's abilities under all six domains of functioning and made the

following findings:

1.  No limitation in "acquiring and using information."  Tr. 24.

2.  Less than marked limitation in "attending and completing tasks."  Tr. 25.

3.  Less than marked limitation in "interacting and relating with others."  Tr. 26.

4.  No limitation in "moving about and manipulating objects."  Tr. 26.

5.  No limitation in "ability to care for yourself."  Tr. 27.

6.  No limitation is "health and physical well-being."  Tr. 28.

In making his determination of less than marked limitations with respect to the domains of

"attending and completing tasks" and "interacting and relating with others," the ALJ specifically

noted a difference in Claimant's symptoms when he took the prescribed medication.  Tr. 25-26.

### V.  Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination

that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321

F.3d 611, 614 (6th Cir. 2003).  The substantial evidence standard requires a court to affirm the

Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Cole v. Astrue*, __ F.3d __, 2011 U.S. App.

LEXIS 19392, 2011 WL 274792, *3 (6th Cir. Sept. 22, 2011), citing *Richardson v. Perales*, 402

U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  A court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  However, an "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole*, *supra*, citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citations omitted).

Plaintiff argues that the ALJ's finding that Claimant's ADHD did not functionally equal the listings for ADHD is not supported by substantial evidence because the ALJ erred in "failing to address [Claimant's] condition for the period when [Claimant] was not on medication and whether there was a good reason for [Claimant's] failure to take medication on a regular basis." Doc. 20, pp. 4-5.  Plaintiff contends that Claimant was not always able to take his medication regularly and that he had good reasons for failing to do so.  Doc. 20, pp. 6-7.  Plaintiff's argument assumes that the ALJ denied Claimant benefits because of his failure to take his medication.

Social Security Regulations provide that a child claimant must follow the recommended prescribed treatment if the treatment can reduce his functional limitations so that they are no longer marked or severe and will be denied benefits if he fails to do so.  20 C.F.R. §§ 404.1530(a), 416.930(a).  If a claimant has a good reason for failing to follow the prescribed treatment, however, then the failure itself is not an impediment to an award of benefits.  20 C.F.R. §§ 404.1530(b), 416.930(b).  Acceptable reasons for failure to follow prescribed treatment include "mental, educational, and linguistic limitations (including any lack of facility with the English language) of the claimant."  20 C.F.R. §§ 404.1530(c), 416.930(c).  Where the failure to follow prescribed treatment may result in the denial of benefits, Social Security Ruling 82-59 requires the ALJ to provide the claimant "an opportunity to fully express the specific reason(s) for

not following the prescribed treatment."  Social Security Ruling 82-59, 1982 SSR LEXIS 25.  The Ruling provides that "[w]here the treating source has prescribed treatment clearly expected to restore ability to engage in any [substantial gainful activity] (or gainful activity, as appropriate), but the disabled individual is not undergoing such treatment, appropriate development must be made to resolve whether the claimant or beneficiary is justifiably failing to undergo the treatment prescribed." *Id.*

Here, the ALJ noted Claimant's failure to take his medication in several sections of his decision.  Tr. 22, 23, 25, 26.  For example, in his analysis under Step Three of the disability evaluation, the ALJ stated the ["C]laimant's behavior improves when he is taking his medication and participates in treatment."  Tr. 23.  In determining that Claimant had less than marked limitations in two of the six domains, the ALJ's opinion raises questions as to the impact Claimant's lapses in taking his medication may have had on those findings.  This is significant because the ALJ would have been required to find Claimant disabled if he had determined that Claimant had marked limitations in two domains.  In his discussion of the domain "attending and completing tasks," the ALJ noted that his finding of less than marked limitation was consistent with the medical evidence that "[C]laimant's ADHD symptoms respond very well when medicine is taken regularly."  Tr. 25.  In his discussion of the domain "interacting and relating with others," the ALJ stated that "[C]laimant's treating sources noted behavioral issues when the [C]laimant fails to take medication."  Tr. 26.  The ALJ did not explain if his conclusions that Claimant's limitations were less than marked in the two domains were based on Claimant's condition while he was taking medication or Claimant's condition while he was not on medication.  In addition, the ALJ never expressly addressed whether Claimant was denied benefits because he failed to take his medication.  Tr. 19-28.

As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).  "Where the ALJ's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Castello v. Commissioner of Social Sec.,* 5:09 CV 2569, 2011 WL 610590, at *2 (N.D. Ohio Jan 10, 2011) (*quoting Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007) (internal quotation omitted); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (the ALJ's analysis must allow reviewing court to trace the path of his reasoning) (*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review").

In this case, the ALJ failed to make sufficiently clear what role Claimant's lapses in following treatment played in his decision to deny benefits.  In particular, it is unclear whether the ALJ relied upon the failure to follow treatment as a basis to determine that Claimant was not disabled.  Although the ALJ might have concluded that Claimant had no limitations or less than marked limitations in the six domains even when he was off his medication, the ALJ never explicitly set forth this conclusion or discussed the severity of Claimant's limitations when not on medication.  Thus, while the ALJ's findings may be supported by substantial evidence in the record, the Court cannot make that determination because the ALJ failed to explain sufficiently the impact of Claimant's non-compliance on his conclusion, thus preventing any meaningful

11

review.  For that reason, the Commissioner's decision should be reversed and remanded.[5]

Moreover, if the ALJ intended to deny Claimant disability under 20 C.F.R. §§ 404.1530 and 416.930 for failure to follow treatment, he did not allow Claimant and/or Plaintiff to explain the specific reasons why Claimant failed to follow the prescribed treatment.  The ALJ did not question Plaintiff or Claimant regarding Claimant's failure to take his medication.  In addition, while there is some evidence in the record regarding episodes of non-compliance, the record is not fully developed.  For example, the duration of many of the episodes of non-compliance is not clear.

If the ALJ based his findings that Claimant's performance was not functionally equivalent to a listed impairment on Claimant's non-compliance with treatment, it was a reversible legal error for the ALJ not to give Claimant and/or Plaintiff the opportunity to fully explain why Claimant did not take his medication.  *See Koch v. Astrue*, No. 4:10CV1828, 2011 WL 1119759, at *3 (N.D. Ohio March 15, 2011) (remand warranted due to the ALJ's failure to adhere to dictates of SSR 82-59).  Thus, a remand is warranted for further fact-finding, evaluation, and analysis concerning Claimant's failure to follow prescribed treatment.

In summary, the ALJ did not explain his analysis of the evidence with enough detail and clarity to permit meaningful review and a remand is therefore appropriate.  On remand, the ALJ should re-evaluate the severity of Claimant's limitations when Claimant is taking his medication, as well as the severity of Claimant's limitations when Claimant is not taking his medication, and provide a more detailed and specific analysis under each of the six domains.  The ALJ should also

---

[5] Plaintiff also argues that medication has not resolved all of Claimant's difficulties and that, even while on medication, Claimant has greater limitations than those found by the ALJ in the domain of acquiring and using information. Doc. 20, pp. 5-6.  Plaintiff argues that the ALJ's finding that Claimant had no limitation in that domain was "clearly in contradiction to the academic record." *Id.* at 5.  While the ALJ stated that his finding was based on his "review of the limited school records and treatment source notes which indicate that the claimant's academic performance is satisfactory" (Tr. 24), he did not elaborate.  On remand, the ALJ should further articulate the basis for his finding concerning the domain of acquiring and using information and should further develop the record with respect to Claimant's academic performance.

follow the requirements set forth in SSR 82–59 if the ALJ concludes that benefits should be

denied based on Claimant's failure to follow treatment.

## VI. Conclusion and Recommendation

For the foregoing reasons, the decision of the Commissioner should be REVERSED and

the case REMANDED for further proceedings consistent with this Report and Recommendation.


Dated: September 28, 2011

**KATHLEEN B. BURKE**
**U.S.  MAGISTRATE JUDGE**


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.